No. ——

First Circuit

———

ANDREPONT v. T. & P. R. R. CO.

———

(January 7, 1927. Opinion and Decree.)
(February 12, 1927. Rehearing Refused.)

———

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Railroads—Par. 61, 62.**

Where the evidence in a crossing accident shows that the engine whistle was blown, that there was a lookout on the tank of the locomotive observing, and the requirements of the law were complied with, the railroad company is not guilty of contributory negligence.

2. **Louisiana Digest—Rrailroads—Par. 63, 64.**

An auto driver who stops, looks and listens but does not do this in such a way as to avoid a collision with an engine, is guilty of contributory negligence, barring recovery.

3. **Louisiana Digest—Railroads—Par. 64.**

The stopping, looking and listening at a railroad crossing must be done in such a time and place as to make it effective and sufficient to save the situation.
(Civil Code, Art. 2315. Editor's note.)

Appeal from the Parish of St. Landry. Hon. B. H. Pavy Judge.

Action by Mrs. Adele Andrepont, wife, against Texas & Pacific Railroad Company.

There was judgment for plaintiff and defendant appealed.

Judgment reversed.

R. Lee Garland, of Opelousas, attorney for plaintiff, appellee.

Peterman, Dear & Peterman, of Alexandria, attorneys for defendant, appellant.

MOUTON, J.   Plaintiff lives on Vine street, which runs east and west through the town of Opelousas. The tracks of defendant company run through Opelousas from northeast to southwest, and across Vine street, almost at right angles. Plaintiff's residence is situated about two blocks west of the railroad track where it crosses Vine street. She left her home in an auto about 2 o'clock in the afternoon to go out shopping in Opelousas. Her sister, Miss Lillian Andrepont; sister-in-law, Mrs. J. P. Andrepont; Miss Boon, a young girl 12 years of age, and two or three children were with her in the car. At the crossing where the defendant's track intersects Vine street the auto plaintiff was driving collided with a tender and engine of defendant company. As a result of the collision she suffered bruises to her hand and a nervous shock, for which she sues the company in damages for the sum of $1500.00.

The district judge gave her judgment for $1000.00, from which the company prosecutes this appeal.

Plaintiff, after leaving her home in the auto, drove eastward along Vine street towards the crossing, and halted her car at the stop signal of defendant company, which is at a distance of fifty-eight feet from the edge of the rail of the railroad track. The proof shows that there is a warehouse north of Vine street, which is 24½ feet from the railroad track. Plaintiff says when she got to the sign post she stopped, looked and listened to see if any train was coming towards the crossing. The proof shows that she stopped at that point, looked and listened for the purpose stated by her. From where she stood in her auto after stopping near the sign post,

plaintiff says she saw south of Vine street a freight train with coaches that were standing on the main track near a sawmill, which was connected with the main line of defendant company by a spur track. The other occupants of the car also saw this freight train and coaches standing there. Counsel for plaintiff, after stating that after plaintiff and the other occupants of the car had listened for an approaching train, says in his brief:

"That hearing neither sound of bell or whistle or noise of approaching train or locomotive, and observing to the right of her a train of box cars, with caboose attached, parked on the main line, near the spur track leading to the Thistlewaith sawmill, plaintiff was led to believe that the engine had gone to the sawmill to do some switching."

The district judge in his reasons for judgment, in referring to the statement of plaintiff and the other occupants of the car that they saw this freight train with caboose on the main line, says:

"They concluded that the engine was on that side of the street, probably switching at the sawmill."

We believe that the evidence justifies this conclusion and that plaintiff erroneously concluded that the engine and tender which had been detached from the freight car were switching near the sawmill south of Vine Street.

No doubt, plaintiff looked for approaching trains after stopping at this sign post or stop signal and listened. From that point she immediately saw the freight car and caboose on the main line south of Vine street, as there were no obstacles in that direction to obstruct her vision. If the engine and tender with which she collided had been approaching from that direction, no collision would have occurred. Her looking that way would have been effective. The engine and tender had, however, been detached from the freight car, had gone north of Vine street and of the crossing to get some water from the tank at the depot. On returning from that direction the accident happened at the crossing.

As the warehouse was north of Vine street and of the stop signal where plaintiff had stopped and looked, her vision from that point looking northward, the direction from which the engine was coming, was therefore entirely obstructed, and looking that way was of no avail. Her listening was of no avail either, as she could not possibly hear the coming of the engine and tender which were moving then, as the record shows, at about six or seven miles an hour. The stopping, looking and listening must be done at such time and place as to make it effective and sufficient to save the situation. State vs. Citizens Bank, 52 La. Ann. 1094, 27 South. 709; Snyder vs. N. O. & R. R. Co., 48 La. Ann. 12, 18 South. 695. The looking or listening of the plaintiff at that point was, therefore, in vain, and could not have saved "the situation". After looking and listening at the stop signal, plaintiff proceeded towards the crossing at about six or seven miles an hour, the speed at which the engine and tender were moving.

The proof shows that the eastern side of the warehouse was 24½ feet from the outer edge of the railroad track. Plaintiff says that, after emerging from the eastern side of the warehouse, she looked both ways along the railroad for approaching or incoming trains. Between this warehouse and the railroad track there was an open space of 24 feet, and from the crossing at Vine street there was no obstacle or obstruction that could have prevented plaintiff from seeing at a long

distance northward along the track. If she had cast a glance in a northerly direction, when she came from behind the warehouse, it is impossible to believe that she would not then have seen the engine and tender coming towards the crossing. She would have seen them immediately after emerging from behind the warehouse, and, no doubt, at a distance of at least 15 or 20 feet from the track. Looking at that time would have been effective and would have "saved the situation". The fact is that plaintiff had concluded that the engine and tender were at the time in the vicinity of the sawmill near which the freight car and caboose had been parked on the main line, as was said by the district judge in his reasons for judgment. Having so concluded, she took it for granted that the engine was in that direction, she proceeded to make the crossing without looking for approaching trains, as she emerged from the warehouse. It is true plaintiff had stopped, looked and listened at the stop signal in compliance with the requirements of the statute on the subject, and, although this was commendable on her part, it did not relieve her of the duty which was incumbent upon her to look for incoming trains the moment or soon after she had passed from behind the warehouse. Although she had stopped, looked and listened once, she was still under the obligation of continuing to keep a watch on the track before attempting to cross it. Reed vs. Mo. Pac., 3 La. App. 608.

When plaintiff saw the engine and tender it was too late for her to stop the auto to avoid the accident. She applied the brakes, killed her engine, and succeeded in stopping just before the auto got on the rail, with the fender projecting about four inches over the rail. The step on the side of the tank hooked the fender of the auto and shoved the auto about eighteen inches or two feet towards the ditch. If plaintiff had looked at the opportune time, and as the situation required, no doubt she would have stopped her auto several feet before it reached the rail of the track and no injury would have resulted. The evidence shows she was living on Vine street, in close proximity to the crossing, and obviously had often walked or driven over it. She was, therefore, familiar with the conditions that existed there, and, by failing to exercise ordinary care in attempting to negotiate the crossing, she was guilt of contributory negligence.

Counsel for plaintiff refers us to the cast of Draiss vs. Payne, 158 La. 652, 653, 104 South. 87. In that case the court held that the failure of a railroad company to use proper care and precautions to safeguard the citizens upon the streets assumes the risk of injury to them, even if the injury received by a citizen is due partly to the latter's imprudence or forgetfulness. In the case cited the court found that the railroad company had disregarded all care and caution in attempting to back its train over a crossing at night, without lights or signals, and in utter darkness. In this case plaintiff contends that the crew on the engine and tender failed to ring the bell or to blow the whistle for the crossing, as required by Act 12 of 1924; that the company was, therefore, at fault and cannot be exonerated from liability under its plea of contributory negligence, as was held in Draiss vs. Payne, 158 La. 652, 653, 104 South. 87. The members of the crew who were on the engine and tender testify that the bell was ringing and that the whistle was blown as they approached the crossing, and that they had a brakeman on the tank, thus observing all the requirements the law imposes on the company to safe-

guard pedestrians or autoists that might be going over the crossing. Plaintiff and her companions in the auto are positive in their testimony that they did not hear the bell or whistle, and positively contradict the evidence of the crew on this question. Let us say that the testimony of defendant's witnesses on this subject should be accepted as the true version of what really occurred, and that the defendant company failed to sound the proper alarms before reaching the crossing. If this was the real situation, would this case fall under the authority above cited upon which plaintiff in a large measure relies for recovery?

In that case all the precautionary measures usually observed had been flagrantly violated by a crew that was backing a train in total darkness over a crossing in the street of a populous city. Not only was the train backing in utter darkness, but the approach of the train was obstructed from view, as was said by the court. The court in that case, as it is proper to note, said as follows:

"The requirement of the exercise of the physical senses in darkness and without any note of warning of an approaching train would be unreasonable under the circumstances of the case."

It is upon this condition of affairs that the court held the company liable, although the accident was "due partly to the plaintiff's imprudence or forgetfulness". Here, the accident occurred about two in the afternoon, on a clear bright day, at a place familiar to plaintiff, with no obstruction whatsoever to impede her view for a long distance northward, the direction from which the engine and tender were backing up to the crossing. In the instant case plaintiff was certainly required to exercise her physical sense of sight, which the court said could not have been required of plaintiff under the circumstances existing in the cited case, as it would have been unreasonable. The present case, and the one above cited, are different in all essential particulars. Here, the defendant is entitled to the benefit of its plea of contributory negligence, which the evidence sustains, and debars plaintiff of the right of recovery.

It is therefore ordered, adjudged and decreed that the judgment appealed from be avoided and reversed, and that the demand of plaintiff be rejected at her cost in both courts.          •